**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | CV-08-1499-PHX-LOA |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | |
| $93,110.00 in U.S. Currency, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) ) | |
| Elsa Bernal, | ) ) | |
| Claimant. | ) ) | |
| _____ | ) | |

        This case arises on Claimant Elsa Bernal's ("Claimant") Motion to Reassign to Tucson Division. (docket # 6) All parties have expressly consented in writing to magistrate-judge jurisdiction pursuant to 28 U.S.C. § 636 (c) and Rule 73, Fed.R.Civ.P. (docket # 8 and # 9) After considering the parties' briefings submitted on the subject Motion and the relevant statutes and cases, the Court concludes that Claimant's Motion should be denied.

## **FACTUAL ALLEGATIONS**

        The Government filed this civil *in rem* forfeiture action on August 1, 2008, alleging eight separate causes of action which collectively seek "to forfeit and condemn to the use and benefit of the United States of America" $93,110.00 ("Defendant property") in U.S. currency. (docket # 1 at 1) The Government alleges that $29,880.00 of Defendant

property "represents proceeds in trafficking in controlled substances or was used or intended to be used in exchange for controlled substances or was used or intended to be used to facilitate a violation of Title II of the Controlled Substances Act, 21 U.S.C. §§ 801, et seq[]" and the remaining $63,230.00 constitutes, among other claims, "proceeds traceable to a conspiracy to transport and/or harbor certain aliens in violation of 8 U.S.C. §1324(a)(1)(A)(ii) and (iii), which is a 'specified unlawful activity['] as defined in 18 U.S.C. §1956(c)(7)(A) and §1961(1), and a conspiracy to engage in money laundering in violation of 18 U.S.C. §1956(h) . . . ." *Id*. at 1-2. The Verified Complaint avers that "[v]enue and Jurisdiction for the Seizure of Assets in Arizona is based upon 21 U.S.C. § 881(j), 28 U.S.C. § 1355(b) and § 1395 based upon acts and omissions occurring in the District of Arizona giving rise to this forfeiture action [and] by virtue of 28 U.S.C. §§ 1345; 1355; and 18 U.S.C. § 981 (h), because the [Defendant property] was found in this district." *Id*. at 3, ¶ 11.

As background, the Complaint claims that "[t]he Phoenix Police Department ["PPD"] investigated 349 cases of kidnaping for ransom during 2007, making Phoenix the leading city in the United States for this crime." *Id*. at ¶ 13. Specifically, the Complaint alleges that a PPD investigation determined Pedro Castaneda ("Castaneda") was engaged in the illegal smuggling and transportation of aliens into the United States from Mexico when Castaneda himself "was kidnaped; assaulted; tortured; and held for ransom by an armed and violent criminal organization." *Id*. at 5, ¶ 16.  According to the Complaint, on March 4, 2008, Castaneda traveled with some friends to a house in the area of 8300 West Indian School Road, in Phoenix, where he was assaulted by armed men, wearing ski masks, who forced their way into the residence, kidnaped and removed Castaneda to 5622 S. 11th Street, Phoenix, where he was held against his will until on or about March 16, 2008. *Id*. at 6, ¶¶ 18-30. After forced participation in ransom telephone calls to his brother, Constantino, and Castaneda's girlfriend, the Claimant herein, Castaneda escaped. The PPD was notified and Castaneda was rescued.  *Id*.

1    The 22-page Complaint details the PPD's active involvement in assisting
2    Claimant and Constantino during the kidnapers' ransom demands, its related investigations
3    before and subsequent to Castaneda's escape, PPD's interviews, and usage of drug-sniffing
4    dogs. It describes the Defendant property, used for Castaneda's ransom payment that was
5    never delivered to the kidnappers, which allegedly was "gathered together in Agua Prieta,"
6    Mexico, where Claimant lives, and "transported to Phoenix to pay the ransom." *Id*. at 13,
7    ¶ 104. On March 15, 2008, Claimant allegedly "entered the United States at the Douglas,
8    Arizona, Port of Entry without declaring currency in amounts greater than $10,000." *Id*. at
9    15, ¶ 129. Constantino and Claimant allegedly requested the ransom money, initially totaling
10   $62,951.00, be held by the PPD for safe keeping. Returning back to Mexico with the ransom
11   money and then back again into the United States to Phoenix at the direction of the
12   kidnappers, the ransom swelled to the sum of $93,110.00 "without the required reporting
13   and delivered directly to the Police." *Id*. at ¶ 137-138. Eventually, Claimant "demanded the
14   return of the money held [by the PPD] as ransom" which the PPD refused pending an
15   investigation "to determine whether the funds had been obtained by illegal means or was
16   involved in violations of the law." *Id*. at 16, ¶¶ 144-145.

17   Finally, the Complaint alleges the Defendant property, gathered by Claimant
18   in Mexico and brought into the United States to pay for Castaneda's release from the
19   kidnapers, represents money generated from the criminal enterprise of human trafficking and
20   was "moved from Mexico into the United States and back to Mexico repeatedly and [was]
21   never identified and declared as required pursuant to the regulations and forms generally
22   described as Currency and Monitor Instrument Reports (CMIR)." *Id*. at 19, ¶ 171. Therefore,
23   the Government contends, the money is subject to forfeiture because, among other reasons,
24   "[t]he entire sum of $93,110 is alleged to be property involved in currency violations
25   including bulk currency smuggling into and out of the United States." *Id*. at 4, ¶ 12.

26   ///

27   ///

28

1

**VENUE ARGUMENTS**

Although Claimant's Answer "admits jurisdiction for this action is appropriate in the District of Arizona . . . and venue would be appropriate anywhere within the district," she cites LRCiv 5.1 and 77.1 and contends that "[e]vents occurring in Cochise County[1] are to be filed in the Tucson Division." (docket # 4 at 1)  Claimant also alleges an affirmative defense that she "is an innocent owner of this currency as defined by 18 U.S.C. § 983(d)(3)(A)." *Id*. at 2.

Claimant's Motion to Reassign to Tucson Division, filed on the same day as her Answer, argues that this civil forfeiture action should be transferred to the Tucson Division of this District Court because "[s]ix of the eight causes of action in this case involve the claimant's alleged failure to declare currency at the point of entry at Douglas, Arizona, Cochise county (sic)[]" and "[n]othing is known about the location of the remaining two causes of action . . . ." (docket # 6 at 1-2)  Claimant argues that "[a]ll that is known with certainty is that [the Defendant property] came from Mexico and entered the United States at Cochise county (sic)," the alien smuggling suspects "reside in Mexico, the related financial transaction occurred in Mexico, [and] the funds were converted into U.S. currency in Mexico. . . . " *Id*. at 2.  Citing LRCiv 5.1 and LRCiv 77.1 as her only authority, Claimant contends that this action should "be tried within [the Tucson Division]." *Id*. at 1.

The Government opposes transfer of this case to the federal courthouse in Tucson, arguing, *inter alia*, that (1) Claimant's reading of LRCiv 77.1 is "fundamentally flawed,"  (2) "the interests of Justice" standard in 28 U.S.C. § 1404(a) strongly favors this forfeiture action remaining in Phoenix where Plaintiff filed it, and (3) in a forfeiture action, venue lies where the property was found, i.e., in Phoenix. (docket # 11) The Court agrees with the Government that this action should remain in Phoenix.

///

---

[1] The Court takes judicial notice that the City of Douglas is located in Cochise County, in southeastern Arizona, at the international border between the United States and Mexico.

1

**DISCUSSION**

2

**A. The Local Rules**

3      "Like Nevada and Alaska, Arizona does not have official, statutory divisions

4  within the District of Arizona." *Smith v. CRST Van Expedited, Inc.*, 2008 WL 413946, * 1

5  (D. Ariz. 2008) (citing *United States v. Rybachek*, 643 F.Supp. 1086 (D. Alaska, 1986) and

6  *El Ranco, Inc. v. First National Bank*, 406 F.2d 1205 (9th Cir. 1969), *cert. denied*, 396 U.S.

7  875 (1969)).  Because Arizona is one large geographical District covering the entire State of

8  Arizona with a rapidly growing population, Arizona's district judges have divided the

9  District of Arizona into three divisions (Phoenix, Tucson and Prescott) and adopted "Local

10 Rules"[2] to assist in the facilitation and administration of justice. LRCiv 5.1[3] and LRCiv

11 77.1(c)[4] address civil venue issues within the District's three divisions. Maricopa County

12 _____

13     [2] The Local Rules of Civil Procedure may be cited as "LRCiv." See, Rules of Practice
   of the United States District Court for the District of Arizona, forward/explanatory note,
14 December, 2007 edition.

15

16     [3] LRCiv 5.1(a) provides in relevant part:

17         [U]nless otherwise ordered by the Court, all filings for the Phoenix and
18         Prescott divisions shall be made in Phoenix, and all filings for the Tucson
           division shall be made in Tucson. In cases where the cause of action has arisen
19         in more than one county, the plaintiff may elect any of the divisions
           appropriate to those counties for filing and trial purposes, although the Court
20         reserves the right to assign any cases for trial elsewhere in the District at its
21         discretion.

22 LRCiv 5.1(a)

23     [4] LRCiv 77.1(c) provides in relevant part:

24
25         (c) Place of Trial. Unless otherwise ordered by the Court, all civil and criminal
           cases founded on causes of action (1) arising in the Phoenix Division shall be
26         tried in Phoenix, (2) arising in the Prescott Division shall be tried in Prescott,
           and (3) arising in the Tucson division shall be tried in Tucson. . . .
27

28 LRCiv 77.1(c)

1  falls within the Phoenix Division; Cochise County within the Tucson Division. LRCiv
2  77.1(a)

3  Generally, district courts are empowered to promulgate local rules regulating
4  their practice, subject only to the limitation that such rules are consistent with the "federal
5  statutes and rules adopted under 28 U.S.C. §§ 2072 and 2075. . . ." Rule 83(a)(1),
6  Fed.R.Civ.P.; *Cedolin v. C.S. Hill Saw Mills, Inc.*, 41 F.R.D. 524, 526 (M.D.N.C. 1967).
7  Local rules are "laws of the United States," *United States v. Hvass*, 355 U.S. 570, 575
8  (1958), "have the force of law[,] are binding upon the parties and upon the court, and a
9  departure from local rules that affects substantial rights requires reversal." *Professional*
10 *Programs Group v. Department of Commerce*, 29 F.3d 1349, 1353 (9th Cir. 1994) (internal
11 quotation marks omitted). "A departure is justified only if the effect is so slight and
12 unimportant that the sensible treatment is to overlook [it]." *Id.* Significantly, the district
13 court is under an obligation to construe local rules so that they do not conflict with federal
14 rules and statutes. *Marshall v. Gates*, 44 F.3d 722, 725 (9th Cir. 1995); Rule 83(a)(1),
15 Fed.R.Civ.P.

16 By its plain terms, LRCiv 5.1(a) indicates that "[i]n cases where the cause of
17 action has arisen in more than one county, the plaintiff may elect any of the divisions
18 appropriate to those counties for filing and trial purposes." LRCiv 5.1(a). Assuming
19 *arguendo*, as Claimant contends, that there is a significant factual nexus between some of the
20 Government's material allegations in the Complaint and the Port of Entry in Douglas, the
21 Government is clearly authorized to file this action in either the Phoenix or Tucson Division.

22 Although LRCiv 5.1(a) and LRCiv 77.1(c) do not define the meaning of
23 "where the cause of action has arisen" and cause of action "arising in the Phoenix Division,"
24 federal statutes authorize that civil *in rem* forfeiture actions "may be brought in the district
25 court for the district in which any of the acts or omissions giving rise to the forfeiture
26 occurred." 28 U.S.C. § 1355(b)(1)(A); *United States v. One Oil Painting Entitled "Femme*
27 *en Blanc" by Pablo Picasso*, 362 F.Supp.2d 1175, 1185 (C.D. Cal. 2005). Moreover, in such

28

forfeiture cases, venue is proper in the judicial district in which the property to be forfeited is found. 28 U.S.C. § 1395(b) ("A civil proceeding for the forfeiture of property may be prosecuted in any district where such property is found.");   *United States v. All Funds on Deposit in any Accounts Maintained in the Names of Meza or De Castro*, 856 F.Supp. 759, 761 (E.D.N.Y.1994), *affirmed by*, 63 F.3d 148 (2nd Cir. 1995), *distinguished on other grounds by*, *United States v. Approximately $1.67 Million (US) in Cash*, 513 F.3d 991, 996 (9th Cir. 2008) (holding Northern California district court had jurisdiction in civil forfeiture action filed pursuant to federal forfeiture provisions that sought funds in offshore bank accounts as government demonstrated that claimant's narcotics smuggling enterprise had significant interactions with district.).

Although her Answer denies the relevant allegations, Claimant has provided no evidence to contradict the Government's allegation that the Defendant property was physically seized in Phoenix by the PPD. In fact, her Reply confirms it when she concedes "the location of the eventual law enforcement seizure of the currency[]" was within Maricopa County. (docket # 12 at 1-2) Construing the Local Rules consistent with the relevant federal forfeiture statutes (28 U.S.C. § 1355(b)(1)(A) and 28 U.S.C. § 1395(b)), as the Court must, the Court concludes that Arizona's Local Rules authorize the filing of this civil forfeiture action, and any trial may be held, in the Phoenix Division's courthouse.

**B.  Title 28 U.S.C. § 1404(a)**

The Government also contends that the federal venue statute, 28 U.S.C. § 1404(a), provides further support that venue of this case in the Phoenix Division is appropriate. The Court agrees.

"Section 1404(a) of Title 28 of the United States Code provides that [f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *One Oil Painting*, 362 F.Supp.2d at 1185 (citations and internal quotation marks omitted); 28 U.S.C.

§ 1404(a).[5] "In deciding whether to transfer venue, a court balances the deference given to the plaintiff's choice of forum with the burden of litigating in that forum." *Id*. (citation omitted). "The defendant must make a strong showing of inconvenience before the plaintiff's choice is upset." *Id*.  *One Oil Painting* instructs that "transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer." 362 F.Supp.2d at 1185 (citation omitted). With a preference to live, in-court testimony, the convenience of witnesses is "the most important factor in passing on a transfer motion." *Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League*, 89 F.R.D. 497, 501 (C.D. Cal. 1981) ("Witnesses may not be compelled to attend trial unless they can be served with subpoenas within the trial district, or at any place outside of the district that is within 100 miles of the place of trial. Fed.R.Civ.P. 45(e)."). The federal courthouse in downtown Phoenix is approximately 115 miles from the federal courthouse in downtown Tucson.[6]

The Government points out that Castaneda's kidnaping "investigation was conducted entirely in Phoenix by law enforcement personnel[]" from "the Phoenix Police Department and ICE Special Agents[.]" (docket # 11 at 3-4) "Moving this case to Tucson would be substantially inconvenient for plaintiff, and would clearly only benefit claimant" who resides in Mexico and her Tucson lawyer. *Id*. at 4. The Government argues that substantial difficulties would result to Plaintiff if this case were transferred to Tucson "to adjust meetings and conversations with the law enforcement personnel to fit their very unpredictable schedule because they are continually engaged in new and continuing

---

[5] Title 28 U.S.C. § 1404(a) provides as follows:

> (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

[6] See, http://www.mapquest.com/

1    investigations."   Additionally, transferring this case to Tucson would likely increase

2    litigation costs with higher witness mileage fees and lodging expenses which is inconsistent

3    with Rule 1's directive that the Rules of Civil Procedure "shall be construed and

4    administered to secure the just, speedy, and *inexpensive* determination of every action." Rule

5    1, Fed.R.Civ.P. (emphasis added).

6            Claimant has made no showing, much less a strong one, why transfer to

7    Tucson would make the trial or the discovery of this case more convenient for any of the

8    witnesses other than the Claimant. Clearly, transfer of this case to Tucson would

9    significantly benefit Claimant's Tucson lawyer, shifts the inconvenience to the

10   Government's Phoenix counsel, and only reduces, not eliminate, Claimant's travel burdens

11   from Mexico. Moreover, Claimant would still likely be required to incur lodging expenses

12   whether the case is tried in Phoenix or Tucson because her home is in Agua Prieta, Mexico.[7]

13   Because the effect of a transfer from Phoenix to Tucson simply shifts the inconvenience to

14   the Government which opposes the transfer, the Ninth Circuit directs that the transfer be

15   denied. *Gherebi v. Bush*, 352 F.3d 1278, 1302 (9th Cir. 2003), *vacated on other grounds*,

16   542 U.S. 952 (2004); *One Oil Painting*, 362 F.Supp. 2d at 1185. Undoubtedly,

17   Government's counsel will stipulate to the taking of Claimant's deposition in Tucson to

18   mitigate her burden of driving from Agua Prieta, Mexico to Phoenix.[8]

19

20           [7] Douglas, Arizona, Agua Prieta's U.S. neighbor, is 119 miles from Tucson. See,
21   http://www.mapquest.com/

22           [8] It is unknown whether the Government will prosecute Claimant for any federal
23   crimes related to the facts alleged in the Complaint. For example, 31 U.S.C.A. § 5332(a)
     makes it unlawful to knowingly conceal more than $10,000 in currency or other monetary
24   instruments on one's person or in a container across the border with the intent to avoid
     currency reporting requirements. 31 U.S.C.A. § 5332(a). The penalty for violating this
25   statute is incarceration of up to five years and criminal forfeiture of the smuggled money.
26   31 U.S.C. § 5322(b); *United States v. Tatoyan*, 474 F.3d 1174 (9th Cir. 2007).

27           Absent a grant of immunity, Claimant's assertion of her Fifth Amendment privilege
     against self-incrimination at deposition or trial may have significant adverse consequences
28   on her claim. See, *Nationwide Life Ins. v. Richards*, ___ F.3d ___, 2008 WL  4051083 (9th

1  After balancing the preference accorded a plaintiff's choice of forum and the

2  adverse impact transfer to Tucson would have on most of the trial witnesses with only a

3  minor reduction in Claimant's financial burden of litigating this case in Tucson, the Court

4  concludes that "the interest of justice" favors denial of Claimant's transfer motion.

5  **C. Venue in Forfeiture Actions**

6  As mentioned above, venue is proper in forfeiture cases in the judicial district

7  where the property to be forfeited is found. 28 U.S.C. § 1395(b) ("A civil proceeding for the

8  forfeiture of property may be prosecuted in any district where such property is found."). Title

9  28 U.S.C. § 1355(b)(1)(A) also provides that a forfeiture action "may be brought in . . . the

10  district court for the district in which any of the acts or omissions giving rise to the forfeiture

11  occurred . . . ." 28 U.S.C. § 1355(b)(1)(A); *United States v. One 1978 Piper Cherokee*

12  *Aircraft*, 91 F.3d 1204, 1207 (9th Cir.1996) (discussing the 1992 amendment to 28 U.S.C.

13  § 1355, "unifying the treatment of jurisdiction, venue and authority to serve process in civil

14  forfeiture cases."). Section 1395(b) of Title 28 of the United States Code further provides

15  that "[a] civil proceeding for the forfeiture of property may be prosecuted in any district

16  where such property is found." 28 U.S.C. § 1395(b). Thus, Congress has repeatedly made its

17  intent clear that venue for an *in rem* civil forfeiture action may be brought in the district court

18  where the *res* sought to be forfeited was found, or in this case, was seized by the PPD.

19  *Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 84 (1992) ("[A] valid seizure

20  of the *res* is a prerequisite to the initiation of an *in rem* civil forfeiture proceeding.").

21  Claimant's Reply acknowledges that "the location of the eventual law

22  enforcement seizure of the currency[]" was within Maricopa County, where, of course,

23  Phoenix is located. (docket # 12 at 1-2)  Therefore, venue for this forfeiture action in the

24  Phoenix Division, where the Defendant property was found and seized, is appropriate.

25  _____

26  Cir. 2008) (trial court did not abuse its discretion in prohibiting insured's wife, who had

27  asserted Fifth Amendment privilege in her deposition, from testifying at trial that she did not
have anything to do with insured's murder, and permitting an adverse inference that she did

28  participate in insured's murder.).

1        Accordingly,

2        **IT IS ORDERED** that Claimant's Motion to Reassign to Tucson Division,

3 docket # 6, is **DENIED**.

4        Dated this 8th day of September, 2008.

                       Lawrence O. Anderson
                    United States Magistrate Judge